BOARD OF HEALTH OF THE TOWNSHIP OF ANDOVER, PLAINTIFF-RESPONDENT, v. JOHN ANDRIOTIS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 26, 1953—Decided November 16, 1953.

316

Before Judges EASTWOOD, JAYNE and FRANCIS.

*Mr. Peter Friedman,* attorney for and of counsel with plaintiff-respondent.

*Mr. Willis H. Sherred* argued the cause for the defendant-appellant (*Messrs. Morris, Downing & Sherred,* attorneys).

The opinion of the court was delivered by

EASTWOOD, S. J. A. D. This appeal concerns the validity of the defendant's conviction by the Sussex County District Court for alleged violations of *R. S.* 26:3B–2, 3, 4 and 7 of the "Health and Vital Statistics" Act. A co-defendant, Springdale Park, Inc., similarly charged and convicted, did not prosecute an appeal.

The defendant Andriotis is the owner and Springdale Park, Inc. the lessee in possession of premises whereon a restaurant and tavern are operated by Springdale. In the lease between Andriotis and Springdale the owner covenanted to keep the premises in good repair at all times. Upon an examination and inspection of the premises by representatives of the plaintiff Board of Health of the Township of Andover (hereinafter referred to as "board of health"), an overflowing cesspool was discovered, whereupon a certain test was made by depositing chemical dyes in the toilet facilities. It was observed that the chemical dyes flowed from the toilets to a cesspool on the defendant's premises and from thence over the ground to a drain which discharges its contents in the Pequest River. After informing the owner and tenant of the aforementioned unsanitary condition, the representatives of the board of health made a subsequent inspection of the premises and found that no changes had been made to correct the unsanitary conditions. This action was thereupon instituted.

The pertinent provisions of the statute allegedly violated, read as follows:

*R. S. 26:3B–2:*

"No person, corporation or municipality shall maintain, use or permit to be used any privy, privy vault, cesspool, septic tank, title disposal field or other means of disposal of human excrement which allows flies to gain access to the excremental matter contained therein, or from which excremental matter or liquid containing excremental matter flows over or upon the surface of the ground or gains access to the source of any public water supply or to any well or spring, used as a private potable water supply."

*R. S. 26:3B–3:*

"No person, corporation or municipality shall deposit or permit to be deposited or to remain on the surface of the ground any human excrement or material containing human excrement or dispose of or place any such material where it can gain access to the source of any public water supply or to any well or spring, used as a private potable water supply."

*R. S. 26:3B–4:*

"No person, corporation or municipality shall deposit, store or allow to accumulate or provide storage facilities for human excrement, any decomposable animal or vegetable matter, domestic, factory, workshop, mill or slaughterhouse refuse, sink, laundry, milk, creamery or cheese house waste or any other polluting matter so that it gains access to any well, spring, stream, lake or other body of water, including the ocean and its estuaries, in such manner as to cause or threaten injury to any of the inhabitants of this State, either in health, comfort or property."

*R. S. 26:3B–7:*

"No person, corporation or municipality knowingly shall maintain or permit to be maintained any accumulation of filth or source of foulness which is hazardous to the health or comfort of any of the inhabitants of this State."

The defendant contends: (1) that the trial court erred in denying his motions for dismissal of the complaint; (2) that the lease was improperly admitted into evidence; (3) that assuming the lease was properly received in evi-

dence, the court erred in refusing to dismiss the complaint as to the defendant landlord; and (4) the failure to reverse will create an intolerable and unjust result.

It must be borne in mind that the action instituted against the defendant Andriotis was for the imposition of a penalty and not to compel him as owner to abate or remove the alleged nuisance. The latter action might have been brought under the authority of *R. S.* 26:3–49; *R. S.* 40:48–23 *et seq.* See *State v. E. I. DuPont deNemours Powder Co.,* 79 *N. J. Eq.* 31 (*Ch.* 1911); *State v. Mundet Cork Corp.,* 126 *N. J. Eq.* 100 (*Ch.* 1939); and *City of Newark v. Charles Realty Co.,* 9 *N. J. Super.* 442, 462 (*Law Div.* 1950).

██ An action such as that instituted here is not necessarily brought against an owner or tenant, but under the statute may be prosecuted against "any person, corporation or municipality" who may commit the acts proscribed by the statute. The mere proof that Andriotis was the owner was not in itself sufficient to support a conviction against him. In an attempt to establish the culpability of Andriotis, the plaintiff introduced, over defendant's objection, the lease between him and the Springdale Corporation, relying upon a provision therein by which Andriotis assumed to keep the premises in good repair at all times. We conclude that, in view of the fact that the plaintiff's proofs fail to establish that Andriotis committed or maintained, or caused or permitted to be committed or maintained, the unsanitary conditions with which he was charged, it becomes unnecessary to determine the question of the admissibility of the lease or to construe the covenant therein requiring the landlord to keep the premises in repair.

The proofs indicate that the unsanitary conditions complained of were created by the tenant in the use and occupancy of the premises, without any knowledge, consent or acquiescence of Andriotis. In fact, there is an absolute dearth of testimony that Andriotis had any knowledge of the unsanitary conditions found by the board of health until so notified by its representative. He then sent a workman to the premises to correct the same, but the tenant would not

permit Andriotis' employee to do the necessary remedial work; in fact, the workman was ordered off the premises by the tenant.

The general rule is that at common law a landlord is not as a rule responsible for nuisances created on the demised premises by his tenant in possession, without his license, knowledge, acquiescence, or cooperation, whether the conditions arise from an act of commission by the tenant or from the omission on his part to keep the premises in repair. To hold the landlord liable for a nuisance occurring after the execution of the lease it must appear that he is in some manner at fault for its creation or continuance. 32 *Am. Jur., Landlord and Tenant, sec.* 762, *pp.* 649, 650.

The controlling rule was discussed by Mr. Justice Jacobs (then Judge Jacobs), in the case of *City of Newark c. Adler,* 3 *N. J. Super.* 231, 234, 235 (*App. Div.* 1949), wherein he stated:

"* * * At common law responsibility for a nuisance on land rested ordinarily with the person in possession and control at the time of its creation and continuance. See *Board of Health v. Eastlack,* 68 *N. J. L.* 585 (*Sup. Ct.* 1902) ; *Ingwersen v. Rankin,* 47 *N. J. L.* 18 (*Sup. Ct.* 1885), affirmed 49 *N. J. L.* 481 (*E. & A.* 1887). See *Ahern v. Steele,* 115 *N. Y.* 203, 22 *N. E.* 193, 194 (*Ct. App.* 1889), where the court stated that 'It is not the general rule that an owner of land is, as such, responsible for any nuisance thereon. . It is the occupier, and he alone, to whom such responsibility generally and *prima facie* attaches.' And while it is clear that a statute or ordinance may impose responsibility on the owner even though exclusive possession and control be vested in another, the question is always present as to whether such was its intent. *Cf. King v. Six Hundred Ninety & Two Realty Corp.,* 153 *Misc.* 619, 275 *N. Y. S.* 753, 756 (*App.* [*Term*] 1934), where the court construed a New York statutory provision imposing liability upon the 'owner' for keeping a multiple dwelling in good repair to mean 'the one in possession and control exercising the usual functions of * * * an owner.' But see *Weiner v. Leroco Realty Corp.,* 279 *N. Y.* 127, 17 *N. E.* 2d 796 (*Ct. App.* 1938)."

In light of the lack of proof establishing Andriotis' participation in the creation, maintenance or acquiescence of the unsanitary conditions, the conviction should be set aside.

Reversed.